UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROB SMITH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   vs. | )    Cause No. 1:10-cv-1706-WTL-TAB |
| | ) |
| D. YOUNG CHEVROLET, LLC, | ) |
| | ) |
|     Defendant. | ) |

### ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment. The motion is ripe, and the Court **GRANTS** the motion to the extent set forth below.

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court

is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTUAL BACKGROUND

The facts read in the light most favorable to the non-movant follow. The Plaintiff, Rob Smith, began working as a body shop technician for the Defendant, D. Young Chevrolet, LLC, doing business as Penske Chevrolet, in late September 2002. Shortly after Mr. Smith started, the work environment took a turn for the worse. Mr. Smith's coworkers – Mark Hampton, Al Musak David Decamp, Jeff Denny, John Denny, and Mel Webber – and his manager, Dan Warfel, began calling Mr. Smith names. At first, these men made comments about Mr. Smith's sexuality. They called him a "faggot" and a "cocksucker." However, Mr. Smith testified that he was able to withstand these negative assaults, even though they were untrue, because there were people out there who are gay and "that was their thing." Because Mr. Smith wasn't bothered by these comments, he believes that his coworkers stooped lower and began making comments either directly or indirectly suggesting that he was a pedophile. They often stated that Smith "liked boys," and once accused him of "molesting" a sandwich. For Smith, this was too much. He explained that this was "intolerable" because it went against his beliefs in fatherhood and had a direct impact on him and his family.

Mr. Smith is not sure why his coworkers made these statements. However, he speculated that it was because they were envious of him. He explained that they made these statements because "they weren't happy and they just didn't want me happy." He said that "that was their reason to lash out on me. If I had something nice, they wouldn't have anything nice to say about it."

Mr. Smith endured this conduct for more than seven years. He testified that he began to have problems sleeping and his relationship with his girlfriend deteriorated. He also once visited a counselor, who encouraged him to write about his feelings in order to better cope with them. Mr. Smith withstood the name-calling for so long because his manager, Dan Warfel, was involved in the name-calling and Mr. Smith "knew what would happen" if he complained. He explained that, at the time, the money was more important to him because he wanted to provide for his children, including sending them to college, so he withstood the barrage of insults.

However, in late 2009, Warfel retired. A new manager, Mike Inman, was hired in January 2010. Mr. Smith saw this as his chance to get some relief from his coworkers' abuse, and he approached Inman shortly thereafter to complain about his treatment. Mr. Smith told Inman that there were some rumors being spread about him, and he wanted Inman to know that the rumors weren't true. Mr. Smith also mentioned that he didn't know what to do about the rumors because the previous manager had been a part of it. Inman replied that he would "look into it." However, according to Mr. Smith, Inman "made it clear that he wasn't on [Mr. Smith's] side" when, the next day, Mr. Smith was written up for putting the wrong part on a car he was servicing.

In mid-February 2010, Inman wrote up Mr. Smith again, this time for improperly putting a vehicle in line for paint. Following this incident, Mr. Smith complained to Penske Human Resources representative Laura Wiggs. Wiggs set up an appointment with Mr. Smith, General Manager Bruce Heath, and herself, and Mr. Smith then told them "the whole story" about "what [he] had been dealing with" in terms of his coworkers' conduct. Mr. Smith told them about the write-ups he had received from Inman that he thought were issued in retaliation for his complaint

3

to Inman about the rumors, and he also told them about the most recent incidents of harassing conduct by his coworkers. These incidents included a statement before Christmas in which Mark Hampton and Tim Gilleran repeated that Mr. Smith "liked little boys." Heath told Mr. Smith that he had waited too long to report the conduct and there was nothing they could do for him. However, following this meeting, Heath spoke to Mr. Smith's coworkers, specifically Jeff Denny, and instructed him not to talk to Mr. Smith. After this meeting, none of Mr. Smith's coworkers made comments to him anymore.

      Mr. Smith's relative peace at work was short-lived, however, because in early March, Mr. Smith requested a medical leave of absence. He provided a physician's note indicating that he would be unable to return to work March 2, 2010, through March 4, 2010, due to issues related to carpel tunnel syndrome. On March 4, 2010, Wiggs sent Mr. Smith a letter explaining that his absence had been preliminarily designated as FMLA-qualified leave contingent on Mr. Smith's return of the required medical certification from his doctor. Mr. Smith did not return to work on March 5, 2010, and between March 5 and early June of 2010, Mr. Smith and Wiggs exchanged three or four phone calls attempting to secure the necessary medical paperwork. In early May, Mr. Smith submitted paperwork to Wiggs releasing him to work but restricting him to light duty work with a fifteen-pound lifting restriction. However, Wiggs told Mr. Smith that no light duty positions were available and his FMLA-qualified leave would expire on June 2, 2010. When Mr. Smith did not return to work after June 2, Wiggs sent him a letter informing him that, due to the exhaustion of his FMLA leave and his failure to return to work, his employment was being terminated.

It is during Mr. Smith's time off that he took his complaints to the EEOC. He completed an initial intake form on April 6, 2010, in which he checked the boxes for harassment and retaliation; however, Mr. Smith did not file a charge of discrimination until May 21, 2010. Mr. Smith's charge of discrimination included the following.

> I have become the victim of unwarranted rumors and sexually-oriented remarks that disparage me as an individual. I do not recall the exact date when disparaging remarks first began, but over the course of the past year, comments were made to me regarding sexual orientation and deviancy which are untrue and abhorrent. These remarks were spread by my co-workers throughout the shop such that most everyone employed at my location has heard them. In fact, these rumors have spread beyond my employment location such that I have had friends and neighbors approach me with comments that they have heard said rumors and of such remarks being made. It has reached the point where I fear it will impact my children in their school surroundings. The remarks include such things as that I am gay, "like little boys" and have had incestual sex with my daughter.
>
> On several occasions I approached my management (including the human resources director) and no action has been taken. Consequently, the personal remarks and rumors have continued without abatement. In fact, I have been unable to return to work in part because of the mental anguish suffered by me on a daily basis stemming from the taunting and derogatory rumors spread throughout my place of employment. Such rumors and remarks constitute sexual harassment which includes "sexual harassment" itself as is generally thought of as well as other verbal or physical harassment of a sexual nature.

The EEOC issued a right to sue letter on September 30, 2010. Shortly thereafter, Mr. Smith filed this proceeding pro se, alleging violations of Title VII and 42 U.S.C. § 1981. The Defendant filed a motion for partial judgment on the pleadings as to Mr. Smith's Title VII retaliation claim and his § 1981 claim. The Court granted the Defendant's motion as to both claims. The Defendant now moves for summary judgment on Mr. Smith's remaining claims.

### III. DISCUSSION

#### A. Sexual Harassment Claim

Title VII makes it unlawful for an employer to discriminate against an individual with respect to that person's hiring, discharge, or employment conditions because of that person's race, sex, religion, color, or national origin. 42 U.S.C. § 2000e-2(1). The ban on sex discrimination in employment includes "sexual harassment that is sufficiently severe or pervasive to alter the employee's terms or conditions of employment." *Bernier v. Morningstar, Inc.*, 495 F.3d 369 (7th Cir. 2007). In this case, Smith argues that he was subjected to sexual harassment by his coworkers and manager.

In order to establish a prima facie case of sexual harassment under Title VII, the plaintiff must demonstrate that: (1) he was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on his sex; (3) the sexual harassment had the effect of unreasonably interfering with his work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002). This means that Mr. Smith must show the Court evidence about each of these items. If he doesn't, then he has not shown the Court the legal minimum requirements for a sexual harassment claim, and he does not get to present his evidence to a jury.

In this case, the record contains ample evidence regarding the third element, the hostile work environment Mr. Smith experienced. Mr. Smith testified that he had trouble sleeping, his relationship with his girlfriend deteriorated, and he had thoughts of suicide because of the harassment he experienced at work. For a man so clearly devoted to his children to consider suicide, which he testified he saw as a way to protect them, the environment must have been

truly awful. The Court agrees with Mr. Smith that there are very few things worse to say about a father than that he is a pedophile.

However, the problem here is that Mr. Smith has not shown the Court that he suffered this demeaning and cruel conduct because he was male. While harassment for any reason is certainly deplorable conduct, the federal law on which Mr. Smith's suit is based only protects people who are harassed for certain reasons. If a person is harassed for reasons not covered by the law, then that person cannot use that federal law to get relief from the harassing conduct. Ultimately, Mr. Smith must show the Court that he was harassed by his coworkers for one of the reasons stated in the law. Mr. Smith claims sexual harassment – that is, harassment motivated by his gender – but he does not actually allege that the harassment was because he was male. Instead, Mr. Smith argues that he was harassed because his coworkers were envious of the life Mr. Smith had worked hard to create for himself and family: he lives in a nice area, he drives nice cars, and he has two beautiful children. This may certainly be true, but unfortunately for Mr. Smith, economic or spiritual wealth are not protected categories under Title VII. This means that, if a person harasses another person because he is jealous of the other person's economic or spiritual wealth, the person being harassed may not get legal relief by suing under Title VII.

Mr. Smith has not shown the Court the legal minimum required for him to be able to present his sexual harassment case to a jury, and therefore summary judgment in favor of the Defendant is warranted.[1]

---

[1] In his response to the Defendant's motion for summary judgment, Mr. Smith requests partial judgment of damages so that he can hire an attorney, but the Court does not have the power to award damages before a finding of liability has been made.

Mr. Smith also objects on the basis of discovery he has not received and depositions he has not yet taken. However, Mr. Smith agreed to complete discovery by October 22, 2011, as set

## B. FMLA Claim

The Family and Medical Leave Act ("FMLA") requires covered employers to grant job-protected leave to eligible employees for qualifying reasons. 29 U.S.C. § 2612. Mr. Smith's complaint hints that he may be pursuing an FMLA claim inasmuch as he states that he could return to work eight days after his allotted FMLA time expired, but instead he was fired. He alleges that other employees were allowed to return to work after the FMLA time limit had expired. The Defendant reads this statement as indicating that Mr. Smith intends to pursue a claim for retaliation or interference with respect to his exercise of FMLA rights. Yet, Mr. Smith's testimony more clearly explains his claim:

> Mr. Smith: Where I was off extended past the time they terminated me on this time, and I believe that was due because of my complaining – or my complaints. But I was off previously and other employees had been off previously past that extended time and were able to return to work.
>
> Q.: So you believe that they terminated you in June of 2010 because of your complaints?
>
> Mr. Smith: Correct. Because two years prior I was off longer than this time, and other employees had been off longer than that time allowed and were able to return to work.

Therefore, Mr. Smith's mention of the FMLA is not the assertion of a claim under it, but rather simply evidence in support of his claim for retaliation. This FMLA evidence, according to Mr. Smith, establishes his disparate treatment from his other coworkers (and even himself in years prior to complaining about the rumors being spread about him) and thus could be seen as

---

forth in the Case Management Plan (docket # 11, page 7), and that time has since passed. Furthermore, as Mr. Smith has already testified that the insults he suffered were not based on his gender, no amount of additional discovery would aid his sexual harassment claim.

circumstantial evidence of a discriminatory motivation for his termination – that is, he was fired because he complained about his coworkers' treatment of him. This Court already dismissed Mr. Smith's retaliation claim because he did not pursue a retaliation claim with the EEOC before filing suit (see docket #20), so the Court will not consider evidence related to this claim. Insofar as Mr. Smith has not brought an FMLA claim, there is no claim on which to grant the Defendant's motion for summary judgment with regard to any such claim.

### C. Slander and Defamation

The Court does not read Mr. Smith's complaint as stating a claim for defamation or slander against the Defendant. However, some of the statements in Mr. Smith's filings with the Court suggest that he believes he has asserted such claims. To the extent that he has, the Court declines to exercise supplemental jurisdiction over them.

Finally, Mr. Smith requests that the Court "take into consideration that this trial is about a father trying to save face for his family and protect his children so that his children do not have to endure the repercussions of this slander and defamation at their schools for this rumor has reached there [sic] neighborhood." The Court acknowledges Mr. Smith's concern for the reputation and safety of his family. However, as Mr. Smith himself recognized at his deposition, monetary damages are all this Court can award based on his requests. Unfortunately, no amount of money can cause words to be unspoken and no amount of scolding from this Court can stop rumors from spreading. While there may be no legal relief for Mr. Smith and his family, the Court hopes that they can move forward in peace.

### IV. CONCLUSION

For the reasons articulated above, the Defendant's motion for summary judgment as to Plaintiff Rob Smith's sexual harassment claim is **GRANTED**. Because the Plaintiff has not brought an FMLA claim, the Defendant's motion for summary judgment as to that claim is **DENIED AS MOOT.** The Court declines to exercise supplemental jurisdiction over the Plaintiff's slander and defamation claims, which are accordingly **DISMISSED WITHOUT PREJUDICE.**

As one final note, the Court's docket has incorrectly referred to the Plaintiff as "Robert" throughout this litigation when the Plaintiff filed his complaint under the name "Rob." **The Court directs the Clerk to correct the error on its docket.**

SO ORDERED: 05/08/2012

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by United States mail to:**

**Rob Smith**
**13156 Dekoven Drive**
**Fishers, Indiana 46037**

Copies to all counsel of record via electronic communication